OPINION
By MERRICK, J.
This action is brought by the Superintendent of Banks in charge of the Liquidation of The Guardian Trust Company against the defendants, who prior to May 11, 1933, are alleged to have been existing trustees of the so-called retirement fund of The Guardian Trust Company. The plaintiff claims to have made a settlement with succeeding trustees on account of claims for stockholders’ liability, arising because of the purchase of stock in the Guardian Trust Company, by the trust and that by virtue of this settlement he received an assignment of all rights and claims of the trust against these former trustees who are named as defendants. The petition charges that these defendants while acting as tru.stees over a period from January 21, 1930, until May 11, 1933, purchased a total number of 1565 shares of the Guardian Trust Company stock for a total consideration of $361,292.43.
It is alleged that the defendants were also directors of the trust company and members of the executive committee and other committees of the bank and that therefore the purchase and retention of the shares of the bank violated the obligations of their relationship to the cestuis in that such action involved a duality of interest; also that these purchases were made with an ulterior purpose to prevent depression of price on the market; that they violated a duty of care incumbent upon them to. invest in sound securities, and otherwise constituted an abuse of discretion in the payment of more than their actual value, etc.
The plaintiff prays that the defendants be held accountable for their misconduct as above described and for judgment for the loss resulting to the fund plus the amount expended for double liability. Whilst the plaintiffs pray for an accounting and for equitable relief, it will be noted that the relief asked for consists of a prayer for judgment for whatever loss the court finds that these acts of the defendant have caused to the trust fund.
The defendants have filed separate demurrers on the ground of the statute of limitations, claim *424 ing that the action is barred by the terms of Subdivision (4) of §11224 GC which is as follows:
“Four years; certain torts. An action for either of the following cases, shall be brought within four years after the cause thereof accrued;
1. For Trespassing upon real property;
2. For recovery of personal property, or for taking or detaining it;
3. For relief on the ground of fraud;
4. For an injury to the rights of the plaintiff not arising on contract nor hereinafter enumerated.
To the contrary the plaintiff contends that application can only be given to §11227 GC, which is as follows:
“An action for relief not hereinbefore provided for, shall be brought within ten years after the cause thereof accrued. * * *.”
A review of the cases wherein the courts of this state have applied §11227 GC results in considerable confusion, so far as the possibility of drawing any conclusive rule of application is concerned. No court of this state attempted to enter into any very careful analysis of the true intention of the legislature in the enactment of this statute, at least, until attention was given to the same in the case of Jensen v Republic Steel Co., 32 Ohio Law Reporter, p. 29. It is admitted by both parties that the courts have generally indicated that §11227 GC is to be applied when the action is exclusively in equity. See Hawkins v Lasley, 40 Oh St 337, which was an action to enforce a partnership judgment against the individual members under the statute. Gray v Kerr, 46 Oh St 652, which was an action for an accounting against a partner after dissolution where there was no fraud involved and no evidence of an agreement to liquidate the assets. Bryant v Swetland, 48 Oh St 194, which was an action by counterclaim to reform a contract on the ground of mistake. Quellig v Hemerlie, 60 Oh St 27, which held that an action by a surety who had paid, to be subrogated to mortgage security held by a credit- or of the principal, is in equity and not on- an implied promise.
Neal v Nash, 23 Oh St 482, wherein an action by a surety who had paid the judgment, to be subrogated to the judgment and to revive the same, was held to be exclusively in equity and not based on an implied promise. In Woodworth v Benning, 29 Oh Ap 81, an action to compel the redemption of real estate and an accounting against a purchaser, with knowledge, from one who held the legal title only and solely as security for a claim, was held to be an action for relief in equity only and not founded on fraud. In many of the above cases reference to the application of this statute was by way of dictum only and in none of them is there more than a brief statement that in the opinion of the court the ten year statute should be applied for the reason that the action was in equity.
On the other hand, the courts of this state have frequently applied §11224 GC above set forth notwithstanding the matter was in equity or even under the exclusive jurisdiction of that court. Thus in Loffland v Bush, 26 Oh St 559: an action to cancel a note on the ground of fraud, Neilson et al v Frye, 16 Oh St 553: an action by a surety who has paid a judgment to be subrogated to the judgment was held to be on an implied *425 promise and barred in six years. In Combs v Watson, 32 Oh St 228, an action to set aside a deed because in fraud of creditors was held to be barred in four years on the ground of fraud. In Stibbins v Summers, relief for fraud was barred in four years. In Carpenter v Coal Co., 35 Oh St 307, an action for wrongfully depriving a mortgage of security was held to be barred in four years regardless of whether it be considered founded in tort or in fraud. In Yearly v Long, 40 Oh St 27, the court held that an action to charge land with the lien of a legacy was barred in six years, because it was based on an implied oral promise. In Railway Company v Smith, 48 Oh St 219, an action to impeach and nullify a settlement on the ground of fraud is barred in four years. In Kerr v Lydecker, 51 Oh St 241, it was held that an action to foreclose a mortgage is based upon a specialty and therefore barred in fifteen years. In Second National Bank v American Bonding Co., 93 Oh St 362, it was held that an action by a surety for rights of subrogation was based upon an implied promise and barred in six years.
A reveiw of the above cases indicates that while some courts have held that the ten year limitation is intended to apply to relief in equity, the conclusions of other courts have made it clear that no such general rule may be laid down. Furthermore, the cases indicate the impossibility of deriving from them any consistent statement of a fundamental rule. The only attempt to derive consistency in respect of the question appears in Republic Steel Co. v Jensen, supra. This was a stockholders’ class suit against the directors of a corporation for breach of their fiduciary obligations to the stockholders. Here in a very extended and exhaustive effort .to find a solution for the problem, the court reviewed the Ohio cases and the efforts of the text writers to distinguish between a case which belongs exclusively to the equity jurisdicton, and one wherein it exercises concurrent jurisdiction. It is recognized that prior to the removal of the distinction between an equitable and a legal action and the adoption of the sole civil action at the time of the enactment of the civil code in 1853, the predecessor section to §11224 GO applied .only to the then existing common law actions, and that so far as equity jurisdiction was concerned with the bar of time, these courts restricted themselves to the doctrine of laches or the adoption of the limitation operative at law where they recognized an analogy. Apparently adopting' Pomeroy’s conclusions that exclusive jurisdiction in equity may not be determined from the external circumstances which give rise to the right or from the mere fact that relief is necessarily in equity, the court appears to- go further and to hold even against Pomeroy’s conclusion, that this matter is to be determined by holding the jurisdiction of equity exclusive, where either the nature of the right owes its origin exclusively to equity or the kind of relief which is sought owes its origin to the exclusive creation of equity. The opinion concludes by holding that in that case the external circumstances, the nature of the rights, and the nature of the relief sought, were all of legal characteristic, and that section 4 of §11224 GO should be applied. Suffice it to say that the conclusion that a stockholders’ suit against officers for breach of fiduciary duties is barred by the four year section, is amply supported by the overwhelming weight *426 of authority both in this state and in other states.
The plaintiff argues to distinguish the Republic case from the instant one, by the claim that plaintiff is here suing an express trustee for an accounting of his actions under the trust; and relies definitely upon Pomeroy’s conclusion that an action must be regarded as exclusively in equity, when either the nature of the right is equitable in its origin or the relief asked for is exclusvely equitable by its nature. The plaintiff contends that Pomeroy and other text writers very definitely state that the trust relationship owes its existence and its cognizance solely to courts of equity. It is claimed that courts of law do not recognize an express trust and that any rights claimed on account of such a relationship owe their origin and their nature solely to equitable recognition and creation and that consequently this case must be recognized as exclusively in equity and therefore subject solely to the ten year limitation.
The defendants have countered by claiming that the petition does not set forth an express trust, since by its terms it makes evident that these trustees were mere managers of the fund whilst the bank itself was the trustee and as such had the legal title to the trust property. The defendants argue therefore that these defendants are just as much mere fiduciary agents, or what the plaintiff refers to as mere quasi trustees, and therefore in the same category as are the directors of a corporation.
Certainly repeated statements are made by the text writers and particularly by the early courts, that a trust owes its origin to equity and as such is exclusively cognizant in equity. Further than this the authorities frequently state that the trust relationship must be recognized as peculiarly the subject of exclusive equity. When, however, these statements are read in the light of the full context of the treatment of equity or legal jurisprudence, it must be clearly recognized that such a statement is entirely too broad to admit of application to individual cases. The intendment of the term trust is subject to a multitude of variations and the nature of the trust relationship which is contemplated by these general statements is subject to so many modifications as to make the general statement quite inappropriate. It is true that many declarations are found to the effect that a trustee may not be sued at law or that he may not be sued for tort or for rejectment or for trover. However, investigation of the cases which are cited under such pronouncements by the text writers, proves that they are drawn form the early history of jurisprudence. Such statements must be viewed in the light of what Pomeroy himself very frequently states as to the effect of modern developments. They had much more justification at a time when common law actions were technical and closely confined and where courts of equity sat entirely separate from those at law. The inflexible principles of the ancient procedure have been greatly modified, so as to give such elastic extension of control to both branches, that the old distinctions must yield greatly to developments. Thus Pomeroy states in his work on Equity Jurisprudence, §65, Volume 1:
“In expanding the law, the judges in later times have designedly borrowed the principles from the moral code, and constructed their rules so as to be just and righteous.”
*427 Again in Section 88:
“In order, therefore, to perform an accurate notion of equity, its present relations with the law must be carefully observed, and to that end the changes which have been made in the law itself, and which have modified those relations, must be pointed out at every stage of the discussion.”
Also Section 84:
“The legislation has done much more than alter the mere external forms and modes of procedure; it has necessarily affected to a certain extent the equity jurisdiction in the granting of its remedies, and has in some instances rendered the exercise of that jurisdiction unnecessary, by removing the ground and occasion for the remedies.”
And in Section 88:
“The foregoing sketch, mere outline as it is, also shows very plainly that a treatise which would accurately represent to the reader the equity jurisdiction of the United States must conform to modern facts, rather than follow ancient traditions.”
And in Section 124:
“Even if the plan of classification according to the nature of equity jurisdiction, considered in its relations with that of the law, possessed at one time certain practical advantages which on the whole rendered it preferable to any other (and I do not admit this proposition as unquestionably true), the recent and great changes made by statute have,' in England, and in many of the states entirely, and in other states to a large extent, destroyed the basis of fact— the relations between equity and the law — upon which the very principles of the classification were founded.”
See also 10 R. C. L., subject Equity, page 270, Section 50, as follows:
“This result has come to pass by reason of the fact that the law has in the coure of time become greatly enlarged and enriched by frequent borrowings of what were formery strictly equitable principles; and while thereby the jurisdiction of equity over the same subjects may not necessarily have been legally circumscribed, any occasion for a resort thereto is gone.”
As a matter of fact, an examination of the cases which are cited in support of statements to the effect that the trust relationship requires the exclusive jurisdiction of equity, indicates, very greatly for the most part, that the circumstances were such as to require equity jurisdiction. Many of them are of the period antedating the civil code, or in jurisdictions where the ancient common law forms prevailed and where the complete separation of the equity from the legal trial procedure still maintains. In such a situation the peculiar and restrictive nature of the common law forms provided no place whatsoever for the relief required. Thus actions against a subsisting trustee in ejectment or trover manifestly could not be countenanced at law for the reason that either possession or ownership resided in both trustee and cestui. Of course, as of the time when the law refused to recognize moral considerations and the ancient tradition was adhered to that the equity court was the keeper of the trustee’s conscience, there was no place at law, where the trustee *428 was allowed no discretion whatsoever. Then too where the case involved peculiar duties adherent in the trust relationship or where the case was for the establishment, enforcement, or construction of the trust, or where matters of accounting were so complex that a court of law was utterly unadaptable, the matter was held for equity. Also most of these cases dealt with a trust relationship which was continuing and subsisting and because of the lack of hostility or adversity all limitations were barred.
That the statement to the effect-that a suit against a trustee belongs unyieldingly in a court of equity is altogether too broad to be accepted as an unflexible rule, is recognized by all textwriters. Pomeroy alone seems to fail to clearly call attention to the multitude of modifications to which this statement must be subjected.
The above brief review of our Ohio decisions indicates that notwithstanding the case might have been in equity under Pomeroy’s rule, the courts frequently applied the time bars of §11224 GC where-ever there was reason to conclude, that the rights in question were recognizable at law or indeed if they merely presented a legal complexion. So that where the action was grounded on a specialty as a mortgage, or on fraud, or on an implied promise, the analogous legal limitation was applied. Both parties in this controversy recognize that even in ancient equity procedure either the doctrine of laches or the analogous legal limitation was applied. The plaintiff himself admits that even as against a trustee, if the situation is such that he is under clear obligation to pay a liquidated amount or to surrender specific property the legal bar is to be recognized.
The problem is brought into much better perspective by statements such as the following:
“Trusts are preculiarly within the original cognizance of courts of equity, and there might seem to be no question as to the jurisdiction of such courts in the establishment or enforcement of a trust. It is generaly held that the fact, that the cestui que trust has a remedy at law does not defeat his equitable remedy but he has his option, and may pursue either remedy. In some jurisdictions, however, the courts apply the rule that where a party can find in a court of law a full and adequate remedy, a court of equity will not afford him relief.”
26 R. C. L., “Trusts,” Section 223, pages 1359 and 1360:
“Ordinarily, relief should be sought by the cestui in equity. Thus, the recovery of the trust property from the trustee of a third person, usually is to be demanded in equity, and bills to establish resulting trusts to protect. the trust estate or for an account and the decree against the sureties on the-trustee’s bond are almost always brought in equity. * * *
“In some cases where no questions of accounting or discretion are involved, there has been a tendency to permit the cestui to sue the trustee or a third person at law to recover a sum due under-the trust for damages for wrongful act. Where no problems of trust administration are involved, .the law court at times feels that it can competently adjudge the rights of the parties. The exact extent of this exceptional aid by the courts of law to the trust beneficiary is difficult to state * * *. * * * It has been held that, where the trustee has misapplied the trust fund, damages for the breach of trust *429 may be recovered, and a similar holding is found in cases where the trustee has broken his trust by a wrongful sale of the trust res, and where the purpose of the trust was accomplished and the trustee had no function to perform.” Bogert “Trusts and Trustees,” Section 871, pages 2536, 2537 and 2538.
“If the cestui que trust is unable to trace the trust fund into the hands of other persons, or into >the hands of third persons, other than bona fide holders for value, or into other property in the hands of the trustee, or elects not to do so, he may proceed against the trustee personally. If the trust property or its proceeds can not be identified, the cestui que trust may proceed against the trustee as against any ordinary creditor, and it is said, that if he elects to proceed against the trustee personally, he can not also proceed against the trust fund.”
Perry on Trusts and Trustees, Section 843, pages 1438 and 1439.
“Where the trustee makes a conveyance of the trust property in breach of the trust, and his grantee continues to hold adversely, the statute applies; and so where the relation of trustee and cestui que trust is absolutely ended, whether by breach of the trust or otherwise.”
Perry on Law of Trusts and Trustees, Section 864, page 1473.
Considerable light is thrown upon this question by a consideration of those cases which allow the legal limitation where the trust relationship has been terminated either by repudiation or otherwise. Indeed there is much to be said for the proposition that a contention for exclusive equity jurisdiction is very largely limited to cases of subsisting and continuing trusts. Quite generally the courts refuse to recognize exclusive jurisdiction of equity in matters of trusts where the relationship is not subsisting and where they meet with this situation either the action is at law or the analogous limitation at law is applied.
“The relation of privity between the trustee and the cestui que trust in an express trust is such that during the continuance of the relation the possession of the trust property by the trustee is not. adverse to the cestui que trust, and so the trustee can not assert personal title by adverse possession and no length of possession of the trust property by the trustee will operate to bar the trust but the trustee may hold adversely if he openly disavows and repudiates the trust, and the beneficiary has either actual notice or the acts or declaration of the trustee asserting title in himself are so notorious and unequivocal as to raise a presumption of notice to the beneficiary; and the statute of limitations will begin to run from the time the beneficiary receives such notice.”
65 C. J., “Trusts,” Section 278, page 531 and 532 and 533.
“It is a well established rule that the statute of limitations does not run as between the trustee and the beneficiary of an express and continuing trust, so long as there has been no denial or repudiation of the trust. The rea-son for the rule is that the possession of the trustee is presumed to be the possession of the cestui que trust. As long as the relation of trustee and cestui que trust is admitted to exist, and there is no assertion of adverse claim or ownership by the trustee, lapse of time can constitute no bar to re *430 lief. To state the rule more accurately, the trusts against which the statute of limitations does not run are those technical and continuing' trusts which are not cognizable at law, but fall within the proper, peculiar and exclusive jurisdiction of courts of chancery; while trusts which are the ground of an action at law are subject to the operation <of the statute.” * * *.
17 R. C. L., “Limitation of Actions,” Section 64, pages 708 and 709.
“And it has been said that when a trustee has parted with all control over the property, and has closed up his relation to the trust, and no longer claims or exercises any authority under the trust, the principles which lie at the foundation of all statutes of limitation assert themselves in his favor, and time begins to cover his past transactions with her mantle of repose.”
17 R. C. L., “Limitation of Actions,” Sec. 65, page 711.
“In other words, the trusts against which the statute of limitation is inoperative are those technical and continuing trusts ■which are not cognizable at law, but fall within the proper, peculiar, and exclusive jurisdiction of courts of chancery; while trusts which are the ground of an action at law are subject to statute.”
122 A. L. R., Note page 286.
This view of the matter which recognizes that trust actions may be at law and that where they are so cognizable the legal statute of limitations will be applied, was recognized very early in the Ohio cases.
“True it is, that the doctrine, that a technical or direct trust is not barred by lapse of time is usually recognized yet it is subject to the following important qualifications, namely: That this rule in equity is dispensed with, except in cases of fraud and concealment; first, where there is a remedy by-action at law to which a limitation is expressly fixed; second, where an open denial or repudiation of the trust is brought home to the knowledge of the parties in interest, which requires them to act as upon an asserted, adverse title; and third, where circumstances exist calculated to raise a presumption, from lapse of time, of a discharge or extension of the trust.”
Phillips v State ex rel., et al., 5 Ohio State, 122, at page 124.
“It is useless to quote authorities in extenso upon this subject. They are very numerous, and the holdings seem to be quite uniform throughout the course of the different states and of United States courts; and they are to the effect that if the relation between trustee and the cestui que trust is denied, is ended, it is terminated no matter what becomes of the fund, where it remains or where it goes, thereafter the trust relation ceases to the extent that the cestui que trust is called upon to proceed either at law or in equity to establish his rights, and such a proceeding under our statute is a civil action, and is not subject to the exemption provided for in the statutes and unless the cestui que trust prosecutes his action within the time required by the statute of limitations, he is barred.”
Larwill v Burke, et al., 19 O. C. C., page 513, at page 531.
“We call attention to the case of Webster, et al., v Bible Society, 50 Oh St 9 wherein Williams, J., speaking for the court, uses this language: ‘It is well settled since the code, and was so before, that only those cases of technical, con *431 tinuing, subsisting trusts which are within the proper, peculiar, and exclusive jurisdiction of courts of equity are exempt from the operation of statutes of limitation. Other trusts which might be the ground of an action at law, have always been subject to such statutes.’ Citing Okey J. Carpenter v Canal Company, 35 Oh St 317, and cases above cited.”
Sing v Strom, Extr., 12 O. C. C., N. S., at 164.
See also Douglas v Cory, Executrix, 46 Oh St, at page 351.
The cases are many where cestuis have been permitted to proceed against a trustee at law particularly when the trust relationship has been terminated or where there has been a breach or a repudiation. Examples of such may be found in the supplement to Bogert on the Law of Trusts and Trustees, Section 871, as follows:
“Cestui may bring code action for damages against trustee for breach of duty under trust instrument in conveying property prematurely.”
Work v County National Bank & Trust Co., etc., 4 Cal. 2nd, 252.
“An action by a beneficiary claiming damages from a trustee for his breach of duty in refusing to pay or deliver the trust fund or in making of improper investments is one at law, triable by jury * *
Dettenhorn v Hartford National Bank, etc., 121 Conn. 388.
“Where a beneficiary of a trust of the assets of a dissolved corporation claims the trustees used the property in business and wasted the assets and the trust is closed because a receiver for the corporate assets has since been appointed, the beneficiary, although not the only cestui, may sue the former trustees for damages in an action at law.”
Ward v Union Bank & Trust Co., 107 P. 2nd, 1083 (Mont.).
“Beneficiary permitted to bring action at law against trustee where trust ended and to recover balance due, although it appeared that the exact amount due was not admitted or known and the account had to be taken.”
Conner v Fisher, 169 Old. 197.
“Where a trustee wrongfully transfers bank stock held by him, a beneficiary may maintain an action of conversion and recover the value of the stock.”
Neel v Clark, 193 S. C., 412.
The following quotations selected from early cases outside of Ohio are presented as examples of the logic applied to the general situation:
“We think the complaint in this case goes for an accounting, as in chancery; but we are not prepared to say that an action on the case could not have been maintained at common law, although we decided-nothing here upon the point. A bailee, an agent, an attorney, a carrier, etc., may be sued in case for negligence; and why not a trustee? What is he but an agent?. I Chit. PI. 134; Story on Agency, p. 258.”
Bennett v Preston, 17 Ind., 291, at page 294.
“* * * when thus forced to rely upon the personal liability of the trustee, a cestui que trust occupies a position towards the estate of the trustee which is no better, but is identical with that of a simple contract creditor. He has no special lien upon the generad estate of the trustee which is superior to *432 that of any other creditor^ for the specific property covered by the trust is gone, and nothing is left to the cestui que trust except a naked claim for damages generally, on account of the breach, to be obtained through an action at law, attended by all the incidents of a like action on behalf of one who is not the beneficiary of a trust.”
Lathrop et al., etc., v Bampton, Exr., etc., 31 Cal., at page 23.
“Syl. 2. An action in tort for damages may be maintained against a trustee who fraudulently conspires with other persons to make a sale of the trust property in his hands at less than its value and did so sell it to the injury of a beneficiary in the trust. The parties advising, assisting and aiding the trustee to carry out his wrongful purposes are also liable to plaintiff in the same action.”
Holderman v Hood, et al., 70 Kans., page 267.
“By exception to the general rule that trusts are cognizable only in ■equity, a trustee may some times be sued at law by his beneficiary ■ after the termination of the trust, as where the trust involves merely investment of a fund and a specified application of its income, the .principal to be paid to the beneficiary in a certain event, and that event has happened and the beneficiary becomes entitled to the fund.”
“Where a trustee has, in violation of his trust, so disposed of the trust estate that it can not be .followed, either in its original or .substituted form, he may be sued at law by the beneficiary to recover damages for the breach of the trust.”
Snider v Parmelee, Syl., 80 Vermont at page 497.
One cannot but feel that a general view of the field of modern developments in the direction of the removal of distinctions between actions at law and actions in equity compels the conclusion, that great force must be given to the general statement that the jurisdiction of equity will only be recognized as exclusive in a code state where the remedy at law is not adequate. The philosophy of this principle would seem to support all the cases against trustees wherein an action has been permitted at law.
“Jurisdiction to establish and enforce a trust particularly in case of a strict trust, is original and inherent in a court of equity, and in some jurisdictions it is held to be exclusive except insofar as a court of law may by statute, or by rules of court, be given jurisdiction. In other states, however, it is held that a court of equity has jurisdiction to enforce a trust, only where there is not an adequate remedy at law.”
65 C. J., “Trusts,” Sec. 941, page 1012. . • ■ .■
“In the last analysis; the difference between an action at law and one in equity lies largely in the mode of relief granted. If the purpose of the action is the recovery of a sum of money or damages, or if the only relief obtainable or appropriate is a money judgment for damages, the action is clearly one at law.”
1 Am. Jur., “Actions,” Sec. 49, page 440.
“Therefore, as a general conclusion it may be said that wherever there exists at law ‘an adequate power, either 'for the prosecution of a right or the redressing of a wrong, courts of equity, with possibly the exception of a few cases of concurrent authority, have no *433 jurisdiction or power or authority to act.’ ”
10 R. C. L., “Equity,” Sec. 17, page 275.
“It is elementary that where an adequate remedy is afforded at law, equity may not be resorted to. Chaplin v Lee, 45 Oh St 356.”
Building Show Co., v Albertson, 99 Oh St, at page 16.
It is clear beyond question, that the Ohio courts have always applied the four year statute when the cause is grounded on fraud, and the legislature can not be held to have intended a longer bar to actions grounded on breaches of legal duties of much less consequence. That the action before us is clearly one at law must be finally concluded from those specific Ohio cases which had for their problem the real distinction between an action at law and one in chancery because of the restrictions of our constitution which prohibits appeals from the Common Pleas Court in other than chancery cases. In the case of Gunsaullus, Admr., v Pettit, Admr., 46 Oh St, page 27, the syllabus is as follows:
“The right to a trial by jury does not depend upon the principles upon which relief is asked, but upon the nature and the character ■of the relief sought. If the relief .sought is a judgment for money only, the fact that before the adoption of our reform system of procedure, the proper remedy would have been by suit in equity, does not affect the right of either party to a trial by jury upon any issue of fact made by the pleadings.” (Syl.)
The court in this case concluded its opinion with the following:
“The case was not then appeal-able and the Circuit Court erred in not sustaining the motion to dismiss same.”
In the case of Wilson Improvement Co. v Malone, et al., 78 Oh. St, page 232, the second syllabus is as follows:
“Within the meaning of the section (5130 R. S.) (§11379 GC) an action for money is an action for money only, unless there is sought some form of relief peculiar to courts of equity, and the action, can not be appealed from the Common Pleas to the Circuit Court (Black, Receiver, v Boyd, 50 Oh St, 46, Overruled.)”
In the case of Wall v Federation Co., 121 Oh St, page 334, Judge Day speaks as follows:
“The record discloses that the plaintiff asked for a money judgment and for money had and received on alleged misrepresentations and violation of contract. We deem it well settled, that, where a petition asks for a money judgment and pleads facts necessary for establishing such right, and an answer is filed which raises the issues of fact upon which either party might demand a jury trial, such cause is a law action and not a chancery case.” * * * (page 337)
In the case before us the plaintiff seeks sole relief of a money judgment for alleged damages resulting to the alleged cestuis on account of a breach of duty resulting from the alleged fiduciary relation of the defendants, at a time when they were allegedly acting as trustees. The rules of conduct, which the plaintiff claims were violated by the defendants, are by no means peculiar because of the exclusive terms of the relationship. On the contrary they are such as *434 are recognized by courts of law as obligations incumbent upon every person who occupies a fiduciary relation to another. The relationship at this time is not in existence. The defendants no longer have any interest or right of control over the property which was the subject of the relationship. The relationship has therefore •been terminated and the defendants are being charged with repudiation or with breaches of alleged trust obligations. The authorities are ample that in such a situation the cestui may sue at law. It is clear that under the Ohio decisions the plaintiff’s case is not in equity at all but is clearly one at law. Plaintiff is in no sense seeking that sort of accounting which would even require the intervention of a court of equity under the present theory of our law. And even though he were seeking an accounting, it has been held that means now provided at law are ample. See Chaplin v Lee, 45 Oh St 356, at page 366. The case is clearly one for damages for the violation of duties which are fixed, recognized and administered on the law side.
For these reasons it is concluded that the fourth subdivision of .§11224 GC, has clear application to the plaintiff’s claims, and since the action was not filed until more than eight years after it is admitted to have accrued, and this fact appears on the face of the petition, the separate demurrers filed by the defendants are sustained.